■ MICHAEL P. MCNAMARA et al., Respondents, v LAKE IN THE SKY, INC., Appellant, et al., Defendant. [641 NYS2d 921] —Casey, J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered January 9, 1995 in Schoharie County, upon a decision of the court in favor of plaintiffs.

In this RPAPL article 15 action, plaintiffs seek a determination that they are the owners in fee simple of a tract of approximately 40 wooded acres located in the Town of Gilboa, Schoharie County, which hereinafter is referred to as the Benjamin Farm.

The parties own adjoining parcels of land which they hold and use for recreational purposes, such as deer and turkey hunting. Plaintiffs purchased their property from the executor of Grace Benjamin Decker in 1976. In that same year plaintiffs engaged Gerald O'Buckley to survey their parcel. Defendant Lake in the Sky, Inc. (hereinafter defendant) purchased its

property, situated to the east of plaintiffs' property, in 1967 and constructed a 20-acre lake on its parcel. The deeds of conveyance to plaintiffs and defendant do not contain metes and bounds descriptions.

At trial plaintiffs' claim was supported by the testimony of their surveyor, O'Buckley. Defendant's claim was supported by the survey it had done by Harry Cornell in 1979. Supreme Court found that plaintiffs' surveyor had prepared and filed a survey that correctly delineated the boundary lines of plaintiffs' property and was an accurate survey of the premises in question.

The survey of O'Buckley was made by using plaintiffs' deed, an aerial photograph of the property and by walking the property and talking to those persons whose property adjoins the disputed parcel. O'Buckley further referred to natural boundary markers such as stone walls, a line of old trees, an old barbed-wire fence and a berm of the lake that was made on defendant's property and came right to the boundary line. Although O'Buckley stated that he was unaware of the tax maps at the time of his survey, he testified that the eastern boundary of the tax map in fact matched the eastern boundary of his survey. O'Buckley reviewed defendant's deed and further testified that, after doing so, he was still confident in his survey.

Cornell, who made the survey for defendant, based his survey on an abstract provided him by defendant and the descriptions of certain adjoining deeds obtained from the County Clerk's office. Cornell stated that he presumed the facts in the abstract were correct and did not do any independent research of those facts. Cornell stated that he found the deeds of certain adjoining property owners helpful in determining the boundary lines. Cornell admitted that an accurate survey of defendant's property would require a survey of all the exceptions contained in the deeds used. Cornell did not mention examining the deed of plaintiffs, who are the adjoining landowners in the dispute.

One of the plaintiffs testified to posting "no trespassing" signs on the property and of learning of the dispute when he found that his signs had been torn down. Plaintiffs also presented the testimony of lay witnesses Carlton Lewis and John Barry, long-time residents of the area who were familiar with the relevant landmarks and had no interest in the outcome of the action. Lewis testified that he remembered plaintiffs' predecessor in title grazing cattle on the parcel now claimed by plaintiffs and that plaintiffs' survey accurately reflected the boundaries of plaintiffs' property. Barry testified that he had hunted the property for over 20 years and it was always

considered part of the Benjamin Farm. Barry also testified that the boundaries of the Benjamin Farm were marked by a barbed-wire fence, a stone wall and a line of trees, which corresponded to O'Buckley's survey.

Members of defendant's hunting club denied seeing a stone wall, survey pins or distinguishing tall trees in a line. Other witnesses for defendant relied on reading the deeds for the descriptions. After 1980 the property was posted by defendants. Although a survey was done for the construction of the 20-acre lake only, no part of the lake is claimed to encroach on the disputed property.

Based on the testimony outlined above, we conclude that the factual findings of Supreme Court are amply supported by the record (*see, Osland v Supnick*, 202 AD2d 712, *lv denied* 83 NY2d 758). Supreme Court's decision rests in part on its assessment of the credibility of the various witnesses, and the record provides no basis for us to disturb that assessment (*see, Schweitzer v Heppner*, 212 AD2d 835, 839). We add that, contrary to defendant's contention, there is no statutory requirement that Supreme Court personally view the premises and, in any event, no request was made here that Supreme Court do so.

Finally, we find no merit in defendant's attempt to raise the issue of adverse possession on this appeal. The courts have generally recognized that adverse possession is an affirmative defense (*see, e.g., Buran v Coupal*, 87 NY2d 173, 177; *Brink v Central School Dist. No. 1*, 63 Misc 2d 293, 294, *affd* 36 AD2d 796). In view of the direct relationship between the doctrine of adverse possession and the Statute of Limitations (*see, Brooks v Anderson*, 82 AD2d 531, 532), there can be little doubt that defendant was required to plead the matter in its answer (*see,* CPLR 3018 [b]). An action pursuant to RPAPL article 15 does not, contrary to defendant's view, automatically raise the issue of adverse possession. Accordingly, we will not consider the issue.

Mikoll, J. P., Mercure, White and Spain, JJ., concur. Ordered that the judgment is affirmed, with costs.